May it please the Court, Phoenicia Carpenter Asui, representing the plaintiff in this case, Capt. Wallace Brown. We have numerous issues that we have alleged on appeal, and I'm not sure if the Court wants me to give a narration or answer questions. I wish to reserve two minutes for rebuttal, please. The first issue was that the District Court erred when it held that an appellant failed to prove how his claims in his amended complaint were like or related to the allegations in his formal charge. Here, the complainant filed a pro se complaint with the Hawaii Civil Rights Commission and the Equal Employment Opportunity Commission for race discrimination. He alleged that an operation that he instructed his subordinates to conduct was named by them Operation Mandingo, which is the word for black slaves. It's a derogatory term that's supposed to be consistent with the N word. He made that complaint. Let's address what's really at issue here. First of all is the issue of whether the 52, I guess, other incidents were properly brought before the Hawaii Civil Rights Commission. And you sent the EEOC a letter. I'm wondering why you didn't formally amend the complaint that Brown had filed. Your Honor, I cannot formally amend a complaint. All I can do is send additional information to the EEOC. And in some cases, they file an amendment. In many cases, they do not. I can ask them to amend it. I can ask them to file a brand-new charge. But it's up to them what they do. And as my records reflect, there's a four- to five-year backlog of cases over there. So I supplemented the record once I was hired because Mr. Brown filed a pro se complaint only alleging the latest incident, the Operation Mandingo incident. And there was years of prior discriminatory conduct that he failed to bring to the attention of the Equal Employment Opportunity Commission and the Hawaii Civil Rights Commission. Why didn't you file a separate formal charge? Because it was connected. Well, in case it isn't connected. Because that's where you are right today. Trying to say it was or it wasn't. In your circumstance, why not file a separate formal charge? I mean, always one can argue, well, that's connected. That's not right. At that point, you got them on the hook. Now, not having done it, we're set with trying to determine whether they are connected or not. I understand, Your Honor. But what I did was I submitted what was not submitted. And it's up to the EEOC to decide whether they're going to amend, file a new complaint, or do nothing. It's not my call. I cannot direct them to do anything with the claim. All I can say is I represent him. He failed to note all of these additional claims, and they take it upon themselves to decide what to do. Amend the complaint, file a new complaint, or do nothing. In most cases, my experience is they do nothing. Well, because, to be fair, whether the first charge about creating a hostile work environment by racially harassing the person or whether the instruction was in violation of the department policy or whether one thought any remedial actions had been taken is not anything about what the second letter is about. Well, Your Honor, that's where I would disagree. How are they similar? Captain Brown submitted 50-something complaints to the warden, and some of them involved violations of law. Contraband, I mean, assault. All of his complaints were literally ignored. He got no feedback. There was never any investigation conducted. Yet, he was assigned to investigate the complaints filed by all of the other captains that work for the Department of Public Safety. None of his complaints were investigated in any way. This leads his subordinates and the inmates to see him as a powerless captain who has no authority, whose complaints will go unnoticed, and there will be no disciplinary action to either the inmates or the subordinates as a result of his formal written complaints to the warden. Based on that, you now have an atmosphere where he's working with inmates and subordinates who all disregard any of his orders. And this is why he's filing complaint after complaint after complaint and writing to the warden and saying you're ignoring my complaint. Yet, at the same breath, he's conducting all the investigations for the Department of Public Safety for the other non-African American captains. Counsel, in your response to Judge Smith's question, I'm curious about something. In your brief, you indicate that one reason that these charges were not raised before the EEOC was because he is a layperson and we look at that generously. But you wrote the letter, didn't you? When I was hired a year and two months after he filed his initial HCRC complaint, I sent a letter to the director saying I was just hired and these are additional claims that your claimant has against the Department of Public Safety. Did you ask them to investigate? Did you file a formal charge? I don't file formal charges or determine who's going to investigate. They have an investigator that's already assigned to the case and they will either let me know we're going to amend, we're going to do nothing, or we're going to file a brand new charge. I wait for the direction from them. So what did they do? They did nothing. Several months later, we received right-to-sue letters. They sent me a letter saying we received all of your additional allegations. Thank you. And the case continued to be under investigation for several more months and then they issued us a right-to-sue letter. When they did nothing, did you take any action or request that they amend it? Well, Your Honor, my office has 20 or more EOC cases and they're all in a waiting period of about four years before anything happens. Wait, but they did send you a letter acknowledging that you had sent your letter with the 52 incidents? Yes. Is that in the record? It may or may not be, but they also sent us a letter saying we notified the respondent of your additional allegations. Is that in the record? It may or may not be. That's not a very satisfactory answer when you're trying to get us to consider whether these – personally, I'm not sure they relate at all to the claim for disparate treatment, but I do think they may relate to the hostile work environment claim. It would be helpful if we knew that at least they were considered before the right-to-sue letter came out. Well, Your Honor, I don't think it's disputed by the State that they received notice. Their briefs and the case is riddled with the discussion of my supplemental claim. So they're not claiming they were not placed on notice of the claims. Well, I guess my biggest problem with all of this is that it seems to me that what you're coming in here and saying is there's all kinds of statutory interpretation of related or not related, and because we don't know whether they're related or not related, we just send a letter over there and we might strike out, and that's our problem. My job – That seems to me what you're really trying to get me to believe, that in your position as counsel, when you look at these and you look at what was filed before, we don't have somebody who doesn't know anything about this process in front of us. We have somebody who is a lawyer who is doing what needs to be done, and you're saying even in that instance, if we don't know whether they're related or not, we don't care, we just send in a letter. Your Honor, my duty is to notify the HCRC and the EOC of our claims. It is not my duty to direct them to take certain actions from that point. The statute only requires that we place them on notice of what we're alleging, and as their subject matter jurisdiction extends over all the allegations of a discrimination complaint that either fell within the scope of the EOC's actual investigation or could reasonably expect it to grow out of the charge of discrimination. That's according to EOC v. Farmer Brothers. So with respect to this, just to be frank with you, I think these relate only to the hostile work environment claim. But suppose we were to conclude that the incidents relate back, at least with respect to that aspect of the claim, would we demand for the district court to reconsider summary judgment of that claim by including analysis of the 52 incidents? Yes, Your Honor. And I believe the district court was a little bit confused. If you could look at the appendix where we have the transcript of the hearing, he was under, I believe, a mistaken belief that each time a plaintiff calls up the EOC and says, oh, by the way, my boss also did this, or sends a letter saying, by the way, they also, I forgot to tell you, they suspended me, that creates a brand new 300-day time limitation. And it does not. You have the initial contact to the EOC, and that is where the time limitation begins. And the case is open, like I said, for years. And as he continues to supplement his record or additional things happen, and he notifies the EOC, we do not get a brand new time limitation each time. So, in fact, Mr. Captain Brown filed his complaint on April 13, 2007. I was hired, and I immediately filed his supplemental complaint on June 30, 2008. And if you look at 300 days prior to Captain Brown's 413-07 complaint, most of the 50 incidents were timely, because the time limitation would end in June 2006. So you can see on page 6 and 7 of my brief, everything after section LL, the 410-06, all the way through the last incident on page 7, triple A, 511-07, were all timely within the 300-day time period of his filing of his complaint with the EOC. Are you suggesting that your 52 claims are exhausted by simply filing your letter? I'm stating that we timely notified the federal and state administrative agencies that he had additional allegations against his employer. Those were timely. Those were within 300 days of his opening and initiating his EOC case. All right. Do you want to save three minutes for rebuttal? Yes, ma'am. Good morning, Your Honors. Nelson Labetta for the Department of Public Safety. If you may please record. Your Honor, the issue of relation back is brought up here for the first time. It is not before the court, on the lower court, and it hasn't been part of any kind of discernible argument in the opening brief. Your Honor, recall that on page 11 of the transcript, the court asked, well, what is your authority concerning relation back? And the answer was in the negative, nothing. And then they went on to talk about the significance, as it were, of the letter that was about a year after the original charge. From then on, the discussion was really as to statute of limitations. Now, at this point – Well, wait a minute. The discussion was about exhaustion. And if the claims relate back, they're exhausted. So I don't understand how you're saying it's not part of the same analysis. I see. The argument put forth in the lower court, Your Honor, was that the letter was a separate new charge right then and there. Why was that? They had a hostile environment claim. And these were incidences – for a hostile environment claim, this would be evidence of the hostile environment. I mean, you wouldn't – when you're suing for a claim for hostile environment, it's not each separate incident that gives rise to that claim. It's the entire picture. If you filed a complaint in feral court alleging a hostile environment and put in two incidences or three incidences, and then you wanted to come in and put in 52 more, that would be evidence that would round out the claim. It wouldn't necessarily have to all be alleged in the very first complaint. I think I understand the court's perspective on that in terms of the hostile work environment. And yet, when we read the actual complaint before the court, when it actually comes to the court, it's couched as a disparate treatment case. Your Honor, what is – So you say you didn't have a hostile work environment claim? There was a hostile work environment charge, Your Honor. That was the Operation Manningel. One day – Right, and so all these other incidences of it were evidence of the hostile environment. Your Honor, what we have to do is we have to go according to what was then brought up in court and how it is characterized. You see, what was characterized is these extra 52 allegations were basically examples of upper management disregarding a number of these complaints by the captain and treating the captain differently from other non-African Americans. So it was a – He was creating a hostile environment where he could not effectively perform his job because they were undermining his authority and doing so using race as a basis for that. Well, I understand that that is what the court is saying now. Yet, Your Honor, the judicial position at that time by the plaintiff was that there was not a hostile work environment in terms of all of these little incidents. It was actually the warden treating a subordinate, the captain, in a different manner. Yes, I understood the allegations. It was a hostile work environment that was based – that was created on the basis of his race and that these incidences, these repeated incidences were on account of race. Your Honor, if we take that position and if I might just – I think it was in the summary judgment ruling. Well, if I could take that aspect then, Your Honor. See, I'm not saying necessarily that he made out that the district court was wrong on the disparate treatment or retaliation. I'm just saying that to me, if I were seeing this anew, putting all those 52 incidents together with Operation Mandango, that's pretty strong evidence of a hostile work environment. As an initial, you know, prima facie case, obviously your client would be able to rebut that and show that it wasn't a hostile work environment. Yet, Your Honor, in order to consider those 52 additional incidents, for example, we'd have to depend upon, I believe it's called the continuing violation theory. Well, what's wrong with that? I mean, it makes a lot of sense that it went over for – I mean, hostile work environment claims usually go over a period of time. That's their nature. It's not one act of racial discrimination. Yet, Your Honor, in order to consider these other missing allegations, these unstated allegations, I believe it's Sosa v. Hirooka that indicates, well, you still really have to go back to the wording of the initial charge. You still have to go to that initial charge in the four corners and what it says. And can you imply a practice? Can you imply a policy discrimination? Does it infer other incidents that are related? All right. Sosa v. Hirooka says that, I'm quoting, an EEOC charge does not demand procedural exactness. It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts. So are you saying they weren't apprised both by the pro se charge, which we construe liberally, and the follow-up letter that was sent to them and you acknowledge it was received, or at least in dispute, it was received before the charge was issued? Well, Your Honor, I believe that the court was saying back in that case is you go back to the original charge to see if then you can bring in the additional allegations. You see, Your Honor, one of the things that I have a problem with is saying that, well, you know, the EEOC was given all this information and it should have sort of bundled it all together. See, I'm really troubled by an over-technical reading of this charge. And it just contravenes the whole policy of Title VII and the way the case is, the courts construe the nature of an EEOC charge. Well, Your Honor, I appreciate that. And yet we go according to the basic. Okay, let's look at SCR 91. Here's the charge. Number one, on March 28, 2007, I was subjected to racial harassment in my position of watch commander. No reasons were given. I was subjected to racial harassment, 3A. The harassment was of a visual nature and created a hostile and offensive working atmosphere. So that's not a hostile work environment claim? It is for one day, Your Honor, by one subordinate. So you're reading it in its most narrow possible way and technical way, right? Well, Your Honor, are we reading it for what it is? That's not the way the EEOC reads these things. Nor are they, by regulation, required to read them that way. Well, Your Honor, you see, one of the things that troubles me, for example, is, well, how do we judge what can be related back? And I think this Court looks at the three areas. One is, well, you can relate back other allegations if it corrects an error of technicality. That's one. Two is if it amplifies the original allegation, this Mandingo incident. Or three, if it grows out of the subject matter. So we always go back to the subject matter. We always go back to the original reading, Your Honor. And to be fair, I understand about laypersons filing complaints, et cetera. That's why we included in our supplemental excerpts the pre-complaint questionnaire. And I believe that's on 93. Do you dispute that Mr. Brown filed complaints about all those other incidents internally with his warden? Do you dispute that he complained about that at work? No, Your Honor. I believe when looking at the record, we had the chief of security who was between the warden and Captain Brown. So that would be Captain Brown's immediate supervisor. And he talked about receiving these complaints, and he talked about never ignoring anyone. Right. That's sort of his defense to the hostile work environment claim, right? And, Your Honor, so do we dispute that they actually happened? No. But we certainly do dispute that. And that he complained about them? Not so much that, but that we ignored him, Your Honor. Okay. He did complain that you're saying you didn't. You're acknowledging all these complaints occurred. So your client was really well aware of all these complaints, but that your client says we didn't ignore him. That's correct, Your Honor. Yes. Let me ask you a couple of questions. I look at the charge of discriminations, which was filed from which Judge Wardlaw just read, which is ER-SER-91. And there was another charge at SER-0092. And I also read that the EEOC issued a letter regarding EEOC charge number two. That that was on October 16, 2008, stating a right-to-sue letter would be forthcoming. What charge is that? I believe that would be the second charge that occurred. Is that the one relating to Warden Clayton Frank? I believe that's the charge relating to the removal of the TA position that the captain was. The retaliation charge? Yes, I believe so. And what was charge number one that came forth in November 21, 2008? I think charge number one would be Operation Mandingo. Because I guess I'm, once again, I'm back to this. Counsel suggests that we send this letter in. We don't know what they're going to do. So we just send another letter in because we don't know what they're going to do. So it either has to be a new charge or they have to relate. But it seems to me that the only charges that the commission ever looked at were those charges that were sent in either in 91 or 92. Would you agree? We agree with that, Your Honor. And we want to point out to the Court that this later letter, talking about these 52 incidents, there's no indication that the person is asking, well, you know, could you amend or supplement the charge? Could you investigate? The only thing that's asked for at the end of the letter is please send a right to sue letter out. So we're going to court. And there's no CC to the State of Hawaii. There's no CC to the Department of Public Safety or the warden. It's just that send the right to sue because we want to go to court. And there's nothing else here that talks about the thing. And there was never any other letter sent out about any EEOC charge 3. That's correct, Your Honor, as far as we know. Well, that's the thing that has worried me all the way through. So as I understand your argument, unless these 52 situations relate to the actual charges made, either in charge 1 or charge 2, they've got to be similar or they're out. Yes, Your Honor. That's our position. All right. I just wanted to make sure because I'm getting a different idea now based on what counsel argued. If there's nothing else, thank you very much, Your Honor. Thank you. Your Honor, in relation to the last line of questioning, I believe if you look at the charge of discrimination form, that's a document. You'll see it says it's an HCRC form, a Hawaii Civil Rights Commission form. Now, the case moved from HCRC to the Equal Employment Opportunity Commission. The Equal Employment Opportunity Commission doesn't prepare a charge of discrimination form. That's for the state entity only. Well, I understand that, but I understand that some of that is because you can file either place. Yes, Your Honor. But that is a form used by the Hawaii Civil Rights Commission. When I filed, I filed with the Equal Employment Opportunity Commission because of the 300-day time limitation. So that second right to sue letter and the new different 486 number. The one on November 21st? I'm not sure, but there was one dated November 21st and one dated October 16th. Now, Your Honor, that one, if you note my June 30th, 08 complaint says, please add a retaliation claim to Captain Brown's complaint because he was only initially race discrimination. And my letter specifically adds them to add a retaliation claim. So the new number is the number for the retaliation claim by being removed from the position. They simply give a new number and that's all they do. They don't say what, you know. Is that on the record? Yeah, on the EEOC right to sue letters, you'll see the different number. And you'll see from my letter 630-08, it says, please add a brand new claim of retaliation. And so they initiated a new number, which would be for my new additional claim of retaliation. So the old 486 number would be for Mr. Brown's pro se race claim. And then the later EEOC number would be in response to my letter saying, please add a retaliation claim. But there won't be the HCRC form that's called a charge. There won't be a third one, is what you're saying. You have to understand how this works, what they do. There's not going to be a third one covering the letter because the second one covered the letter. It was a response to your letter. Well, I guess the thing that's a little worrisome to me is that we have one of these that went in in August. And we had another one that went in in July. August of 2007 is when it says date filed. That might have been the charge of discrimination form. I tried to read through to see what they get, when they get it, what they do about it, so that I could, first of all, make that determination. Then I tried to see, is it similar? And, frankly, I had a tough time given the opportunity to see that it was similar to what was talked about against Melvin Kaya-Ana or Warden Clayton Frank. I understand, Your Honor. Maybe I could clarify. The initial pre-complaint was filed by Captain Brown on April 13, 2007. He signed the charge of discrimination form on August 28, 2007. And then I filed the supplemental complaint alleging retaliation and additional facts on June 30, 2008. Okay. I have that. And then the Title VII, you got the right to sue under Title VII. And that's the basis for the complaint that we're now looking at, right? We actually received four right to sue letters, two from the state agency and two from the federal entity, yes. So the state claim has been stipulated out, 11th Amendment immunity. All right. Thank you, Your Honor. Thank you. Brown v. Department of Public Safety will be submitted.
judges: Alarcon, Wardlaw, Smith N. R.